UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEVIN S. VARNER,<br><br>Petitioner,<br><br>v.<br><br>WARDEN,<br><br>Respondent. | CAUSE NO. 3:25cv815 DRL-SJF |

OPINION AND ORDER

Kevin S. Varner, a prisoner without counsel, filed a habeas corpus petition challenging his 2023 conviction in Benton County for attempted aggravated battery, unlawful possession of a firearm by a serious violent felon, criminal recklessness, and resisting law enforcement under Case No. 04C01-2302-F1-052. For the following reasons, the petition is denied.

BACKGROUND

In deciding the petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). The Indiana Court of Appeals set forth the facts underlying Mr. Varner's conviction as follows:

> Varner killed [Danielle] Brown in Lake County using a Draco firearm. The gun was capable of firing the same ammunition as an AK-47 rifle and could penetrate police body armor. After the killing, Varner fled the scene and was driving in Benton County when he failed to make a complete stop at a stop sign. Benton County Sheriff's Department Deputy Paden Clements began following Varner's vehicle, which quickly pulled into a gas station and parked at a gas pump. When Deputy Clements pulled in behind Varner's vehicle and opened the door of his marked police vehicle, Varner drove away from the gas station and ran a red light. Deputy Clements

> activated his emergency lights and pursued Varner at speeds approaching approximately 100 miles per hour.
>
> During the pursuit, Deputy Clements observed Varner reaching into the passenger side of his vehicle. Varner then raised his arm over the headrest, pointing backward toward Deputy Clements' vehicle. Deputy Clements heard gunshots and saw Varner's back window explode outward. Deputy Clements also heard bullets "whizzing" past his vehicle and described the sound as "very close."
>
> The gunfire cause[d] Deputy Clements to swerve his vehicle and make a "hard turn" over a concrete barrier before he could renew his pursuit. The chase moved from the highway onto county roads. When Deputy Clements temporarily lost sight of Varner's vehicle around some turns, Varner threw the gun from his vehicle onto the road. As Deputy Clements navigated the turns, he discovered Varner's vehicle wrecked in a ditch. Varner had fled on foot, but other responding officers soon apprehended him nearby. When Deputy Clements retraced the pursuit route, he recovered the gun that Varner had thrown into the road. Shell casings fired from that weapon were found inside Varner's vehicle.
>
> The State charged Varner with attempted murder, attempted aggravated battery, possession of a firearm by a serious violent felon, criminal recklessness, and reckless driving. The State also alleged that two firearm sentencing enhancements and a habitual offender enhancement applied.
>
> Varner, who represented himself at trial,[1] admitted to the jury that he fired the shots but claimed he did not intend to kill or injure Deputy Clements. The jury acquitted Varner of attempted murder and reckless driving but found him guilty of attempted aggravated battery, possession of a firearm by a serious violent felon, and criminal recklessness. The jury also determined that Varner was a habitual offender and that the two firearms sentencing enhancements applied. At sentencing, the trial court vacated the criminal recklessness conviction and one firearm enhancement based on double jeopardy concerns, and ultimately imposed an aggregate sentence of 61 years.

[ECF 16-6 at 2-4 (internal citations omitted).]

---

[1] The record reflects that Mr. Varner previously represented himself at trial in two other criminal cases, including the related murder case. [*See* ECF 15-5 at 18-28.]

Mr. Varner also opted to represent himself on appeal. [*Id.* at 4.] In his brief, he raised a variety of claims.[2] [ECF 16 at 3.] As is relevant here, he argued that (1) the trial court erred in refusing to dismiss the charges on double jeopardy grounds; and (2) the state failed to prove beyond a reasonable doubt that he committed attempted aggravated battery. [ECF 16-3 at 3, 4.] The court found his double jeopardy claim waived for failing to make a cogent argument pursuant to Ind. App. Rule 46(A)(8)(a). [ECF 16-6 at 9–10.] The court also rejected his sufficiency of the evidence claim, finding the evidence sufficient to support the conviction. [*Id.* at 16-17.]

He then petitioned for transfer to the Indiana Supreme Court asserting two claims that he cast as follows: (1) "Did the continuing crime doctrine survive the Supreme Court's adoption of a new substantive double jeopardy test in *Wadle v. State*, 151 N.E. 3d 227 (Ind. 2020), and if so, does the three-part test found in *Wadle*, the actual evidence test found in *Richardson v. State*, 717 N.E. 2d 32 (Ind. 1999), or a separately enforceable double jeopardy standard apply to such claims?" and (2) "Are the Supreme Court's statements in *Wadle v. State*, 151 N.E. 3d 227, 249 (Ind. 2020) ("if the facts show only a single continuous crime, and one statutory offense is included in the other, then the prosecutor may charge these offenses only as alternative (rather than as cumulative) sanctions")

[2] The Indiana Court of Appeals summarized his claims as follows: "I. Whether Varner is entitled to discharge under Indiana Criminal Rule 4(B)? II. Whether the trial court properly refused to dismiss charges against Varner? III. Whether the trial court abused its discretion and showed bias toward Varner in admitting in his Benton County trial evidence of his testimony in the Lake County murder trial? IV. Whether the trial court abused its discretion in rejecting Varner's proffered instruction on the continuing crime doctrine? V. Whether the State proved beyond a reasonable doubt Varner's commission of aggravated battery? VI. Whether alleged irregularities in the habitual offender proceeding justify reversal?" [ECF 16-6 at 4.]

judicial dicta that should be given effect as a holding by the Supreme Court?" [ECF 16-8 at 2.] The Indiana Supreme Court denied his petition to transfer without comment. [ECF 16-9.]

He then filed his federal petition asserting two claims: (1) there was insufficient evidence to support his attempted aggravated battery conviction; and (2) his conviction for possession of a firearm by a serious violent felon violated double jeopardy principles. [ECF 1 at 3.] The respondent argues that claim one is procedurally defaulted and without merit under governing standards, and claim two is procedurally defaulted and, to the extent it is based on state law, not cognizable on federal habeas review. [ECF 16.] Mr. Varner filed a traverse in support of his petition. [ECF 20.]

ANALYSIS

The petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which allows a court to issue a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Habeas corpus was intended as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Gilbreath v. Winkleski*, 21 F.4th 965, 981 (7th Cir. 2021) (citation and quotations omitted). The court can grant an application for habeas relief only if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with

> respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This standard is "difficult to meet" and "highly deferential." *Hoglund v. Neal*, 959 F.3d 819, 832 (7th Cir. 2020) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). "It is not enough for a petitioner to show the state court's application of federal law was incorrect; rather, he must show the application was unreasonable, which is a 'substantially higher threshold.'" *Hoglund*, 959 F.3d at 832 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). In effect, "[a] petitioner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Before considering the merits of claim contained in a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Hoglund*, 959 F.3d at 832. The exhaustion requirement is premised on a recognition that the state courts must be given the first opportunity to address and correct violations of their prisoners' federal rights. *Davila v. Davis*, 582 U.S. 521, 528 (2017); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state

review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. This includes seeking discretionary review in the state court of last resort. *Boerckel*, 526 U.S. at 848. The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a claim when the claim was presented to the state courts and denied on the basis of an adequate and independent state procedural ground, or when the claim was not presented to the state courts and the time for doing so has passed. *Davila*, 582 U.S. at 528; *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). With these principles in mind, the court turns to Mr. Varner's claims.

A. *Sufficiency of the Evidence.*

Mr. Varner first claims there was insufficient evidence to support his attempted battery conviction. The respondent argues this claim is procedurally defaulted because Mr. Varner did not present it to the Indiana Supreme Court. As the respondent correctly points out, to exhaust a claim, the petitioner must assert his claim in a petition for discretionary review in the state court of last resort. *Boerckel*, 526 U.S. at 848. Mr. Varner did not do that here. Thus, the claim is defaulted.

In his traverse, Mr. Varner argues that he was not required to include his claim in his petition to transfer in order to exhaust. He is incorrect. *See Boerckel*, 526 U.S. at 848. He also argues that the court should review his defaulted claim because he is actually innocent, and relatedly asks the court to expand the record to include the trial transcripts from his murder trial, which in his view prove his innocence.

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass" to obtain review of a defaulted claim. *McQuiggin v. Perkins*, 569 U.S. 383, 386

(2013). In this context, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quotations and citation omitted). To raise a credible claim of actual innocence, the petitioner must have "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence[.]" *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *see also Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (petitioner claiming actual innocence "must have documentary, biological (DNA) or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim"). The petitioner must demonstrate that in light of this new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. This standard is "demanding" and can be met only in "extraordinary" circumstances. *House v. Bell*, 547 U.S. 518, 538 (2006).

Here, Mr. Varner points to the transcripts from his murder trial to support his actual innocence claim and asks the court to expand the record to include this evidence. Under AEDPA, federal habeas courts are not meant to be "an alternative forum for trying facts and issues," and instead the court's review is limited to "the evidence presented in the State court proceeding." *Woodson v. Mlodzik*, 129 F.4th 1036, 1041 (7th Cir. 2025). AEDPA permits the court to expand the record with new evidence in only very narrow circumstances. 28 U.S.C. § 2254(e)(2); *Shinn v. Ramirez*, 596 U.S. 366, 379–80 (2022). However, "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief," there is no reason to expand the record. *Schriro*, 550 U.S. at 474.

As reflected in the transcripts he submits, Deputy Clements testified at the murder trial that, while he was pursuing Mr. Varner's vehicle, he saw Mr. Varner pick up something from the passenger seat, and then saw bullets come through Mr. Varner's rear window. [ECF 19-1 at 45-64.] Deputy Clements further testified that the bullets were close enough to be heard on the microphone inside his vehicle. Additionally, Mr. Varner admitted on the stand that he had a firearm with him in the vehicle and used it to shoot at Deputy Clements while the officer was pursuing him. [ECF 19-2 at 22-23.] Even if the court considered this extraneous evidence, it falls far short of proving his actual innocence.

Assuming for the sake of argument he could overcome the procedural default of his sufficiency of the evidence claim, the respondent alternatively argues that the claim fails under governing standards. Under the Due Process Clause of the Fourteenth Amendment, a defendant cannot be convicted unless the state proves all the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). A court considering a sufficiency of the evidence claim must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

To prove Mr. Varner guilty of attempted aggravated battery, the state was required to establish that he engaged in conduct that constituted a substantial step toward the commission of aggravated battery. Ind. Code § 35-41-5-1(a). Aggravated battery, in turn, is committed when (as is relevant here) a person knowingly or

intentionally inflicts injury on another person that creates a substantial risk of death, "serious permanent disfigurement," or "protracted loss or impairment of the function of a bodily member or organ[.]" Ind. Code § 35-42-2-1.5. Under Indiana law, "[a] person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

In determining that the evidence was sufficient to support Mr. Varner's conviction, the Indiana Court of Appeals applied a standard consistent with *Jackson*.[3] (ECF 16-6 at 16.) The court summarized the evidence supporting his conviction as follows:

> Varner acknowledges firing the shots from his vehicle while Deputy Clements pursued him. But Varner claims "there is not evidence that establish[es] that [Varner] knowingly or intentionally attempted to inflict injury" on Deputy Clements when Varner fired the shots. On the contrary, the record shows that Varner, while fleeing Deputy Clements, picked up the weapon that Varner used to kill Brown and fired through the back window of his vehicle. Deputy Clements's vehicle was directly behind Varner's vehicle at the time. The trajectory of the shots was such that Officer Clements heard the "whizzing noise" of bullets moving "very close" to him. This evidence was sufficient to show Varner had the requisite intent to inflict injury on Deputy Clements when Varner fired.

(*Id.*) (internal citations omitted).

On habeas review, the court's consideration of a sufficiency of the evidence claim is limited, and it is not permitted to reweigh the evidence or substitute its judgment for

---

[3] Although the court cited to state case law rather than *Jackson*, under AEDPA, a state court need not cite to or even be aware of applicable Supreme Court case law, "so long as neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002). The Indiana Court of Appeals' decision does not contradict Supreme Court precedent.

that of the factfinder. *Ford v. Ahitow*, 104 F.3d 926, 938 (7th Cir. 1997). Rather, it must view all of the evidence in the light most favorable to the prosecution. *Id.* at 938. The court may not overturn the state court's finding of sufficient evidence unless it was objectively unreasonable. *Saxon v. Lashbrook,* 873 F.3d 982, 988 (7th Cir. 2017).

Reviewing the evidence here, the court readily concludes that the state court's resolution of this claim amounted to a reasonable application of *Jackson*. The record reflects that Mr. Varner admitted to firing shots at Deputy Clements when the officer was directly behind him during a high-speed chase, and he used a weapon capable of piercing body armor. Although he claimed he was aiming for the officers' tires, the jury was not required to credit this statement, and there was ample evidence from which the jury could conclude that he knowingly attempted to inflict serious injury on Deputy Clements in order to elude him. Assuming the court could reach this claim, it does not entitle him to habeas relief.

B. *Double Jeopardy.*

In claim two, Mr. Varner argues that his unlawful possession of a firearm conviction violated double jeopardy principles. In his view, because he used the firearm to commit the murder of Danielle Brown in Lake County and used it four hours later to shoot at Deputy Clements, this was a "continuous offense" for which he should have only been punished once.

The respondent argues this claim is also procedurally defaulted. The court agrees. Mr. Varner presented a double jeopardy claim to the Indiana Court of Appeals, but the court found it waived under state law as inadequately developed. [ECF 16-6 at 9–10.] The

finding of waiver constitutes an adequate and independent state procedural ground that bars federal habeas review. *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010) ("[W]hen a state court refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules . . . that decision rests on independent and adequate state procedural grounds."); *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009) (finding of waiver constitutes adequate and independent state procedural ground that bars federal habeas review); *Bobo v. Kolb*, 969 F.2d 391, 399 (7th Cir. 1992) ("A federal court reviewing a habeas petition is required to respect a state court's finding, under state law, of waiver or procedural default.").

Mr. Varner argues the claim is not defaulted because he presented it at the state trial court level. Even if this is true, it does not help him overcome the default that occurred at the appellate level. He also argues that the Indiana Court of Appeals' finding of waiver was not "adequate" because the court applied the waiver rule in a "in an unprincipled way." It appears he wants this court to make its own determination of whether he adequately developed the claim in his brief to the Indiana Court of Appeals, but "[i]n assessing the adequacy of a state procedural ruling, federal courts do not review the merits of the state court's application of its own procedural rules." *Crockett v. Butler*, 807 F.3d 160, 167 (7th Cir. 2015). Instead, the court asks merely whether the rule invoked was "firmly established and regularly followed." *Id.* That standard is satisfied here, because "Indiana courts regularly find waiver by invoking Indiana Appellate Rule 46(A)(8)(a)." *Nunley v. Brown*, No. 219cv12, 2020 WL 1508576, 11 (S.D. Ind. Mar. 30, 2020) (collecting cases).

A second level of default occurred when he failed to present a federal double jeopardy claim to the Indiana Supreme Court. To fairly present a claim to the state courts, the petitioner must have alerted the courts to the "federal nature" of the claim. *Baldwin*, 541 U.S. at 33; *see also Hoglund*, 959 F.3d at 832-33 ("The basic question is whether in concrete, practical terms. . . the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis."). Although Mr. Varner raised a double jeopardy claim in his petition to transfer, it was based on state law; specifically, the Indiana Supreme Court's opinion in *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020), related to continuous offenses.[4] [*See* ECF 16-8.] Because he did not present this claim to the state court of last resort, it is procedurally defaulted. *Boerckel*, 526 U.S. at 848.

He argues in his traverse that he properly presented a federal double jeopardy claim to the Indiana Supreme Court because he cited *United States v. Ellis*, 622 F.3d 784 (7th Cir. 2010), for the proposition that a violation of the federal felon-in-possession statute is a "continuous offense." [ECF 16-8 at 10.] Although *Ellis* does contain some general discussion of double jeopardy principles, *Ellis* had little apparent relevance to his case, as he was not convicted of violating the federal felon-in-possession statute. The focus of his petition to transfer was clearly the Indiana Supreme Court's opinion in *Wadle* and other state law principles, as identified on the page labeled, "Questions Presented." [*See id.* at 2.] "The basic question is whether in concrete, practical terms. . . the state court

[4] To the extent he is raising a claim here based on Indiana law, the claim is not cognizable on federal habeas corpus review. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis." *Hoglund*, 959 F.3d at 832-33. Mr. Varner did not do that here, and instead merely mentioned *Ellis* in passing in the context of a larger discussion about the Indiana Supreme Court's holding in *Wadle*. [*See* ECF 16-8 at 9-12.]

The court is thus not persuaded by his arguments that he properly exhausted his federal double jeopardy claim in state court. His invocation of the actual innocence exception is also unavailing. As previously stated, he admitted at both the murder trial (reflected in the transcripts he provides) and the aggravated battery trial that he was in possession of a firearm in his vehicle when he was attempting to elude Deputy Clements.[5]

Assuming for the sake of argument he could overcome the procedural default, he has not demonstrated an entitlement to federal habeas relief. The Fifth Amendment's Double Jeopardy Clause, made applicable to the states through the Fourteenth Amendment, "provides that no person may be tried more than once for the same offence." *Currier v. Virginia*, 585 U.S. 493, 498 (2018) (citation and quotations omitted). The Clause "serves the function of preventing both successive punishment and successive prosecution," and also precludes a defendant from "being twice punished for the same offence." *Witte v. United States*, 515 U.S. 389, 395–96 (1995) (citation omitted). The Clause prohibits retrials following acquittals, *Richardson v. United States*, 468 U.S. 317, 323-24 (1984), and encompasses some aspects of the doctrine of collateral estoppel, precluding

[5] He also offers nothing to undercut the evidence that he had prior felony convictions at the time of the offense. [*See* ECF 15-2 at 25, 43; ECF 15-7 at 50-54.]

the government "from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager v. United States*, 557 U.S. 110, 119 (2009).

None of these principles was violated here. Mr. Varner was not acquitted of any of these offenses in a prior trial, and although he suggests he was punished twice for possessing a firearm, this is incorrect. In the Lake County case, he was punished for murdering Danielle Brown; in the Benton County case, he was punished for attempting to commit aggravated battery against Deputy Clements and possessing a firearm despite his prior felony convictions.[6] Although he was initially charged with possession of a firearm by a serious violent felon in the Lake County murder case, the prosecution later dismissed that charge and there was no jury determination of the issue. [*See* ECF 16-6 at 9; ECF 15-7 at 54.] His double jeopardy claim, assuming the court could reach it, is unavailing.

C. *Certificate of Appealability*

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition

[6] Notably, the trial court took pains to avoid any double jeopardy concerns related to the offenses of conviction and sentencing enhancements resulting from Mr. Varner's complex criminal history. The court ultimately declined to impose any sentence for the criminal recklessness charge and one of the sentencing enhancements, and ordered the habitual offender enhancement portion of his sentence to be served concurrently with the sentence imposed in the murder case. [ECF 15-7 at 92-103.]

should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations and citation omitted). For the reasons fully explained above, Mr. Varner's claims are procedurally defaulted, not cognizable, or without merit under AEDPA standards. The court finds no basis to conclude that reasonable jurists would debate the outcome of the petition or find a reason to encourage him to proceed further. Accordingly, the court will not issue him a certificate of appealability.

CONCLUSION

For these reasons, the court DENIES the petition [ECF 1], the petitioner's motion for leave to expand the record [ECF 19], and a certificate of appealability, and DIRECTS the clerk to close this case.

SO ORDERED.

August 13, 2026

*s/ Damon R. Leichty*
Judge, United States District Court